106 N. Broadway, LLC v Lawrence (2020 NY Slip Op 07151)





106 N. Broadway, LLC v Lawrence


2020 NY Slip Op 07151


Decided on December 2, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 2, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
RUTH C. BALKIN
JEFFREY A. COHEN
HECTOR D. LASALLE, JJ.


2018-04389
 (Index No. 57543/17)

[*1]106 N. Broadway, LLC, appellant,
v
Houlihan Lawrence, et al., respondents.


Montalbano, Condon & Frank, P.C., New City, NY (John E. Finnegan of counsel), for appellant.
Jones, LLP, Scarsdale, NY (Jeffrey Briem, Marcy Blake, and Stephen J. Jones of counsel), for respondents Houlihan Lawrence and Patricia Flood.
Clifford L. Davis, White Plains, NY, for respondent Hilary Chenel Levy.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract and breach of fiduciary duty, the plaintiff appeals from an order of the Supreme Court, Westchester County (Terry Jane Ruderman, J.), entered March 15, 2018. The order, insofar as appealed from, granted those branches of the motion of the defendant Hilary Chenel Levy which were pursuant to CPLR 3211(a) to dismiss the causes of action alleging breach of fiduciary duty and tortious interference with business relations and/or expectancies insofar as asserted against her, and granted those branches of the separate motion of the defendants Patricia Flood and Houlihan Lawrence which were pursuant to CPLR 3211(a) to dismiss the amended complaint insofar as asserted against the defendant Houlihan Lawrence and to dismiss the causes of action alleging breach of fiduciary duty and tortious interference with business relations and/or expectancies insofar as asserted against the defendant Patricia Flood.
ORDERED that the order is modified, on the law, by deleting the provision thereof granting that branch of the motion of the defendants Patricia Flood and Houlihan Lawrence which was pursuant to CPLR 3211(a) to dismiss the third cause of action for breach of the implied covenant of good faith and fair dealing insofar as asserted as against the defendant Houlihan Lawrence, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from, with one bill of costs to the defendant Hilary Chenel Levy payable by the plaintiff.
The plaintiff, as the owner of certain commercial real estate in Irvington, entered into an "Exclusive Right to Sell/Rent Agreement" (hereinafter the sales agreement), dated January 17, 2014, with the defendant Houlihan Lawrence, a commercial real estate broker. On August 26, 2014, the plaintiff entered into a "Land Purchase Agreement" (hereinafter the purchase agreement) with nonparty Shelter Development, LLC (hereinafter Shelter), as purchaser. The purchase agreement provided that Shelter would pay the plaintiff $6,125,000 for the subject property, provided, among other things, that Shelter obtained "final, unappealable zoning approval" for the construction of its intended senior living community at the subject property. Shelter had the right to terminate the [*2]purchase agreement at any time if, despite good faith diligent efforts, it was unable to obtain the development approvals by the closing date or any extension thereof. The purchase agreement further provided that "no agent, broker or finder . . . acted for [the plaintiff] in connection with this Agreement and the sale of the Property except for . . . Elizabeth Hargraves of Houlihan Lawrence." On April 21, 2016, Shelter informed the plaintiff by letter (hereinafter the termination letter) that Shelter concluded that it would be unable to obtain the necessary approval and that it terminated the purchase agreement.
In a letter dated January 24, 2017, counsel for the plaintiff sent a demand letter (hereinafter the demand letter) to counsel for Houlihan Lawrence. The demand letter alleged that the defendant Hilary Chenel Levy, a Houlihan Lawrence agent and a member of the Planning Board of the Village of Irvington, informed the plaintiff that Shelter's application for zoning approval would be denied and that the plaintiff should keep the subject property on the market for other prospective buyers. The demand letter further alleged that the plaintiff had previously complained to Houlihan Lawrence about Levy's potential conflict of interest with the zoning approval and sale and that, while Levy's "inappropriate behavior was acknowledged," no other action was taken. According to the demand letter, Levy left Houlihan Lawrence but "continued her efforts to disrupt" the transaction.
The demand letter also asserted that the defendant Patricia Flood, another Houlihan Lawrence agent, and other, unnamed Houlihan Lawrence agents also "set out to divert and/or obstruct the sale" after a neighbor of the plaintiff, who had acquired his property in a transaction that Houlihan Lawrence had brokered, was "made aware by Houlihan Lawrence agents that a senior living community would take over the property" and threatened to sue Houlihan Lawrence for misrepresentation. The demand letter further claimed that Flood "used her personal ties in the political arena of Irvington to make significant efforts to prevent th[e zoning] approval . . . . [including] threatening [the plaintiff] to withdraw [sic] the zoning project and encouraging community members to speak out against the incoming senior-living community."
On May 15, 2017, the plaintiff commenced the instant action. The amended complaint asserts four causes of action against the defendants: (1) negligence; (2) breach of fiduciary duty; (3) breach of contract; and (4) tortious interference with business relationships and/or expectancies. The plaintiff annexed the sales agreement, purchase agreement, termination letter, and demand letter to the amended complaint. In sum and substance, the amended complaint recites the genesis of the plaintiff's engagement with Houlihan Lawrence, from its inception to Shelter's termination, and memorializes the allegations set forth in the demand letter.
Houlihan Lawrence and Flood moved, and Levy separately moved, pursuant to CPLR 3211(a)(1) and (7) to dismiss the complaint insofar as asserted against each of them. The Supreme Court granted the motions and directed dismissal of the amended complaint insofar as asserted against all defendants. The plaintiff appeals from so much of the order as directed dismissal of the amended complaint insofar as asserted against Houlihan Lawrence and directed dismissal of the causes of action alleging breach of fiduciary duty and tortious interference insofar as asserted against Flood and Levy.
"On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction. We accept the facts as alleged in the complaint as true and accord plaintiffs the benefit of every possible favorable inference" (People v Credit Suisse Sec. [USA] LLC, 31 NY3d 622, 642). On a CPLR 3211(a)(7) motion to dismiss, the question is whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d 83, 88-89). "A motion to dismiss pursuant to CPLR 3211(a)(7) will fail if . . . the complaint states in some recognizable form any cause of action known to our law" (Teller v Galak, 162 AD3d 959, 960 [internal quotation marks omitted]).
"Under CPLR 3211(a)(1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law. In assessing a motion under CPLR 3211(a)(7), however, a court may freely consider affidavits submitted by the [*3]plaintiff to remedy any defects in the complaint and 'the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one'" (Leon v Martinez, 84 NY2d at 88 [citations omitted], quoting Guggenheimer v Ginzburg, 43 NY2d 268, 275). However, where the plaintiff elects to stand on its pleading, as is the case here, the plaintiff may not be penalized because it has not made an evidentiary showing in support of the complaint (see Rovello v Orofino Realty Co., 40 NY2d 633, 636).
As to the first cause of action, which alleged negligence, the plaintiff argues that it has a cause of action for negligent supervision against Houlihan Lawrence. "A necessary element of a cause of action to recover damages for negligent hiring, retention, or supervision is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury" (Shu Yuan Huang v St. John's Evangelical Lutheran Church, 129 AD3d 1053, 1054 [internal quotation marks omitted]).
Here, the amended complaint fails to sufficiently allege that Houlihan Lawrence knew or should have known of a propensity on the part of either Flood or Levy to commit the alleged wrongful acts (see id. at 1054). Affording the pleading a liberal construction, the amended complaint fails to allege that Houlihan Lawrence had any reason to know, prior to the unspecified time when the plaintiff made a verbal complaint, of any propensity of either Levy or Flood to engage in the alleged conduct. The amended complaint fails to allege that Levy continued to engage, during her remaining tenure with Houlihan Lawrence, in the alleged conduct after the plaintiff complained to Houlihan Lawrence. While the amended complaint does allege that Levy continued her efforts to disrupt the sale, it states that she did so after she left Houlihan Lawrence. As to Flood, the amended complaint does not allege any specific conduct of Flood after the plaintiff complained to Houlihan Lawrence about her conduct. We therefore agree with the Supreme Court's determination directing dismissal of the first cause of action insofar as asserted against Houlihan Lawrence.
We also agree with the Supreme Court's determination to grant those branches of the defendants' separate motions which were to dismiss the second cause of action, which alleged breach of fiduciary duty. "The elements of a cause of action to recover damages for breach of fiduciary duty are the existence of a fiduciary relationship, misconduct by the defendant, and damages directly caused by the defendant's misconduct. [A] fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect[,] barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty" (Greenberg v Wiesel, 186 AD3d 1336, 1338 [citation and internal quotation marks omitted]). "A cause of action sounding in breach of fiduciary duty must be pleaded with particularity under CPLR 3016(b)" (Litvinoff v Wright, 150 AD3d 714, 715 [internal quotation marks omitted]).
The plaintiff alleges that Levy and Flood "established a fiduciary relationship with Plaintiff when they assumed an active role in participating with the transaction of the Subject Premises by making efforts to re-list the Subject Premises and present same to their prospective buyers." This allegation is insufficient to support the claim that a fiduciary relationship existed between Levy and/or Flood and the plaintiff. "A [confidential or] fiduciary relationship exists between two persons [or entities] when one of them is under a duty to act for or to give advice for the benefit of the other upon matters within the scope of the relation" (AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 11 NY3d 146, 158 [internal quotation marks omitted]; Gargano v Morey, 165 AD3d 889, 890). While a real estate agent owes a fiduciary duty to its principal (see Dubbs v Stribling & Assoc., 96 NY2d 337, 340), here, there is no allegation that the plaintiff engaged either Levy or Flood, as individuals, to act as its agent. Further, although a fiduciary relationship may be found to exist in all cases in which influence has been acquired and abused, and in which confidence has been reposed and betrayed, here, there is no allegation of special circumstances that would transform any relationship of Flood and Levy to the plaintiff into a fiduciary one (see AHA Sales, Inc. v Creative Bath Prods., Inc., 58 AD3d 6, 21-22). There is no allegation that the plaintiff placed any confidence or trust in either Levy or Flood or that either of them acquired or abused any confidence from the plaintiff.
Houlihan Lawrence cannot be held liable for failing to assure that its affiliated licensees forgo making offers to its principal, the plaintiff seller, on behalf of other potential buyers, notwithstanding the pendency of a contingent contract of sale. A broker cannot be expected to decline a prospective purchaser's request to see the property, particularly since imposing such a limitation would frustrate the seller's interest, who would benefit from having at least having a back-up offer to the pending contingent contract (see Rivkin v Century 21 Teran Realty LLC, 10 NY3d 344, 356; Sonnenschein v Douglas Elliman-Gibbons & Ives, 96 NY2d 369, 376). Thus, to the extent that the cause of action for breach of fiduciary duty insofar as asserted against Houlihan Lawrence rests on the allegations that it continued to re-market the property, or failed to prevent its agents from having conflicts of interest, such allegations do not state a cognizable cause of action. The plaintiff's allegation that Houlihan Lawrence breached its fiduciary duty by allowing its agents to obstruct the zoning process and the pending sale, despite having been warned by the plaintiff that conflicts were apparent, fails for the reasons previously stated: (1) as to Levy, there is no allegation that she continued to engage in any wrongful conduct during the time she remained with Houlihan Lawrence after it was warned by the plaintiff; (2) as to Flood, there is no allegation that she engaged in any wrongful conduct after her conduct was complained of by the plaintiff to Houlihan Lawrence.
In the third cause of action, alleging breach of contract, the plaintiff alleges that Houlihan Lawrence breached the covenant of good faith and fair dealing to be implied in the sales agreement. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance" (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153). Implied in each contract is a covenant of good faith and fair dealing, which encompasses any promise that a reasonable promisee would understand to be included (see New York Univ. v Continental Ins. Co., 87 NY2d 308, 318). The covenant is breached where one party to a contract seeks to prevent its performance by, or withholds its benefits from, the other (see Rayham v Multiplan, Inc., 153 AD3d 865, 868).
Here, the allegations in the amended complaint that Houlihan Lawrence deprived the plaintiff of the benefit of the brokerage agreement by Houlihan Lawrence's pursuit of efforts to interrupt the sale of the property that its own efforts brought about are sufficient to state a cause of action (see Ahmed Elkoulily, M.D., P.C. v New York State Catholic Healthplan, Inc., 153 AD3d 768, 770-771). While Houlihan Lawrence does not dispute that it had the continuing duty to refrain from doing anything that would destroy or injure the rights of the plaintiff, it contends, citing cases applying the doctrine of respondeat superior, that Houlihan Lawrence cannot be held liable for the acts of its real estate agents, other than those directly representing the plaintiff, occurring outside the scope of their employment. The Supreme Court agreed with Houlihan Lawrence in this regard.
Assuming, without deciding, that the principles of respondeat superior, a tort concept, apply in this context, whether an act of an employee is within the scope of employment is generally a jury question, dependent upon such factors as: the connection between the time, place, and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated (see Riviello v Waldron, 47 NY2d 297, 302-303). On this motion to dismiss, Houlihan Lawrence has not submitted any evidence in support of its assertion that acts of Levy and Flood were outside the scope of their employment and, even if it had, the plaintiff may not be penalized for not submitting evidence in support of its allegations in the context of a motion to dismiss. Accordingly, the Supreme Court should not have directed dismissal of the third cause of action insofar as asserted against Houlihan Lawrence.
In the fourth cause of action, the plaintiff alleges both that the defendants tortiously interfered with the plaintiff's contract with Shelter and that the defendants tortiously interfered with its prospective business relations with Shelter.
To state a cause of action alleging tortious interference with contract, the plaintiff must allege: the existence of a valid contract between it and a third party, the defendant's knowledge of that contract, the defendant's intentional procurement of the third party's breach of that contract [*4]without justification, and damages (see Ferrandino & Son, Inc. v Wheaton Bldrs., Inc., LLC, 82 AD3d 1035, 1036). Here, the plaintiff has failed to plead that Shelter breached its contract with the plaintiff. The plaintiff annexed the termination letter from Shelter to the amended complaint and did not allege that the termination was wrongful. Rather, the documents annexed to the amended complaint by the plaintiff reflect that Shelter terminated the contract pursuant to its terms.
While a cause of action for interference with prospective contract or business relationship is closely akin to one for tortious interference with contract, the former requires proof of more culpable conduct on the part of defendant (see Carvel Corp. v Noonan, 3 NY3d 182,190; NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d 614, 621). "A claim for tortious interference with prospective business relations does not require a breach of an existing contract, but the party asserting the claim must meet a 'more culpable conduct' standard" (Law Offs. of Ira H. Leibowitz v Landmark Ventures, Inc., 131 AD3d 583, 585, quoting NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d at 621). "This standard is met where the interference with prospective business relations was accomplished by wrongful means or where the offending party acted for the sole purpose of harming the other party" (Law Offs. of Ira H. Leibowitz v Landmark Ventures, Inc., 131 AD3d at 585). "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract" (Guard-Life Corp. v Parker Hardware Mfg. Corp., 50 NY2d 183, 191). "The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort" (Carvel Corp. v Noonan, 3 NY3d at 190). "[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship" (id. at 192).
To prevail on a claim for tortious interference with business relations, a party must prove: (1) that it had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party (see 684 E. 222nd Realty Co., LLC v Sheehan, 185 AD3d 879, 879-880; Amaranth LLC v J.P. Morgan Chase & Co., 71 AD3d 40, 47).
Here, none of the wrongful conduct that the plaintiff alleges was directed at Shelter; if anything, the alleged wrongful conduct was directed at neighbors, community members, and village officials. Moreover, the plaintiff does not allege that Shelter would have declined to terminate the contract "but for" the actions of the defendants (see Gettinger Assoc., L.P. v Abraham Kamber Co., 83 AD3d 412, 413; Slatkin v Lancer Litho Packaging Corp., 33 AD3d 421; Ricca v Valenti, 24 AD3d 647). Additionally, the plaintiff has failed to set forth facts sufficient to meet the requirement that it plead that the defendants used wrongful means or committed an independently actionable tort.
The plaintiff's remaining contention is without merit. The defendants' remaining contentions either are without merit or need not be reached in view of our determination.
SCHEINKMAN, P.J., BALKIN, COHEN and LASALLE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court